# IN THE COURT OF APPEALS OF IOWA

No. 24-1893
Filed December 3, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRITTNEY ANN BISDORF,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Robert J. Richter,

Judge.


        The defendant appeals her sentence, arguing the State breached the plea

agreement.  **AFFIRMED.**


        Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for

appellant.

        Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney

General, for appellee.


        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

Brittney Bisdorf pled guilty to one count of domestic abuse assault while using or displaying a dangerous weapon for assaulting her child's father in May 2024. Bisdorf and the State negotiated a plea agreement for a two-year prison sentence with all but two days suspended. The court sentenced Bisdorf to a term of imprisonment not to exceed two years. She appeals this sentence, arguing the prosecutor breached the plea agreement at sentencing by requesting the court to consider Bisdorf's "assaultive nature." We find the State did not breach the plea agreement, so we affirm the sentence.

## I. Background Facts and Proceedings.

In May 2024, Bisdorf was driving a vehicle and saw the father of her child (first victim) walking. She claims she was attempting to talk with him to recover some of her personal items. He stepped into the road and she drove over his foot, resulting in a compound fracture in his right leg and ankle. The traffic cameras showed that her vehicle "lurched forward" as he entered the road.

Bisdorf pled guilty to domestic abuse assault while using or displaying a dangerous weapon in violation of Iowa Code section 708.2A(2)(c) (2024). In the same plea agreement, Bisdorf also pled guilty in a separate case involving a September 2024 assault against another individual. Bisdorf was sentenced for both convictions during the same sentencing hearing, but only her sentence for the first victim is on appeal.

Regarding the first victim, in the plea agreement, Bisdorf and the State negotiated a two-year prison sentence with all but two days suspended. Bisdorf acknowledged in the plea agreement that "the Court is not bound by the plea

agreement and may sentence [Bisdorf] up to the maximum sentence provided by law."

At the sentencing hearing, a victim impact statement from the first victim was read aloud and pictures of his injuries were attached. Both the State and Bisdorf argued that the court should accept the plea agreement. The district court sentenced her to a term of imprisonment not to exceed two years. Bisdorf appeals.

## II. Standard of Review.

"We review sentences imposed in criminal cases for correction of errors at law." *State v. McCollaugh*, 5 N.W.3d 620, 627 (Iowa 2024). "To warrant reversal of a sentence, the record must show some abuse of discretion or some defect in the sentencing procedure." *State v. Patten*, 981 N.W.2d 126, 130 (Iowa 2022) (cleaned up). The prosecutor's breach of a plea agreement is such a defect to cause reversal of a sentence. *Id.*

## III. Analysis.

Bisdorf argues the State breached the plea agreement by emphasizing Bisdorf's "assaultive nature" and requesting that the district court consider it in sentencing. The State contends it merely was acknowledging that it had considered all the context surrounding "Bisdorf's crime, including the assaultive nature highlighted in the victim impact statement, in concluding that this agreement was appropriate."

In the plea agreement, Bisdorf and the State agreed that for the assault of the first victim, Bisdorf should be "sentenced to 2 years prison, with all but 2 days suspended; placed on 2 years formal probation . . .; responsible for $855.00 fine, $90.00 surcharge, court costs, attorney fees and victim restitution."

At the sentencing hearing the victim witness coordinator read the first victim's impact statement and it mentioned Bisdorf's later assault:

> I'm a victim of a terrible, violent assault crime from Brittney Bisdorf. I sent pictures of my foot so you can see it for yourself. I won't be able to walk ever again for the rest of my life. . . .
>
> This is all due to Brittney Bisdorf['s] violent domestic felony assault towards me. Please send her directly to prison for way longer than 2 years. I'll have to deal with all my problems that she gave me way longer than any prison time that she receives. My whole life is completely and totally changed now and I'll never be able to go back to anything normal ever again. I believe that after she committed a crime towards me that she still didn't learn her lesson, because shortly after, Brittney Bisdorf committed another domestic crime towards someone else.

After the victim impact statement, the prosecutor addressed why the district court should accept the agreement:

> I reviewed the charges as filed, [Bisdorf's] criminal history, taken into account the facts and circumstances surrounding the assault, and the State believes that the plea agreement is—is something that can protect the community. There will be a no contact order; so she does have a no contact order. She is on probation and has to report.
>
> The concerns about her assaultive nature are clear, and I think it was very evident. And I wish—I want the Court to consider that when considering the plea, but considering all of the other facts surrounding it, and I think mostly it is her criminal record and the amount of time she sat in jail.

After hearing: the victim impact statement, from the State, and from Bisdorf, the district court exercised its discretion and rejected the plea agreement, instead imposing a two-year prison sentence stating:

> Unfortunately, in this case, Ms. Bisdorf, you've laid some groundwork that I just can't ignore. The incident with [the first victim] was in May, and that was a significant injury that you caused to him. I believe his statement is absolutely sincere. That it has absolutely altered his life forever. The pictures of his injury are horrific. The way it's described with the bleeding at the scene—horrific. The pain that you caused him—substantial and, frankly, lifelong.

But that isn't where it ends. You then have pled guilty to another domestic assault in September. All of it tells me that, for whatever reason, you didn't take this serious, and there hasn't been a change in your behavior. And so I think I need to make sure my sentence impresses upon you that these—as I said at the beginning, actions have consequences. So I'm not going to follow the plea deal.

I'm going to impose a two-year prison sentence, and it will be imposed. None of it will be suspended. It will be imposed.

When determining if a breach of the plea agreement occurred, we consider "whether the prosecutor acted contrary to the common purpose of the plea agreement and the justified expectations of the defendant and thereby effectively deprived the defendant of the benefit of the bargain." *State v. Frencher*, 873 N.W.2d 281, 284 (Iowa Ct. App. 2015). To comply with a promise to recommend a sentence, prosecutors must do more than simply inform the district court of the plea agreement. Recommending a plea agreement requires

the prosecutor to present the recommended sentence with his or her approval, to commend the sentence to the court, and to otherwise indicate to the court that the recommended sentence is supported by the State and worthy of the court's acceptance.

*State v. Lopez*, 872 N.W.2d 159, 173 (Iowa 2015) (cleaned up). It is not a breach of the plea agreement when a prosecutor urges the court to adopt the plea and mentions negative information about the defendant to provide context to the court. *Frencher*, 873 N.W.2d at 285 (holding the prosecutor did not violate the plea agreement when providing context to the sentencing recommendation by discussing the defendant's "criminal history and some of the negative information contained in the [presentence investigation report].").

Bisdorf concedes that the State recommended the agreed upon sentence but contends that the State's comment about her "assaultive nature" breached the "spirit of the plea agreement" and relies on *Lopez*. In *Lopez*, the court held that

though the prosecutor had recited the agreed sentencing recommendation they breached "the spirit of the agreement" by using unnecessary photographs and implying the defendant still had anger issues and was a threat to the community. *Lopez*, 872 N.W.2d at 178–80. We find that *Lopez* does not control here.

Though the State mentioned her assaultive nature, we take that as the State informing the district court the prosecutor had considered the entire context surrounding this plea—not that the prosecutor mentioned it to undermine the plea agreement. The district court was already aware of the defendant's "assaultive nature" from the first victim's statement, and the court had knowledge of both domestic abuse charges. *See State v. Pearl*, No. 13-0796, 2014 WL 1714490, at *3 (Iowa Ct. App. Apr. 30, 2014) (finding no breach of a plea agreement in part because the court was already aware of the defendant's negative behavior). Further, the State noted that the plea agreement "[could] protect the community" and recommended the plea in light of all the circumstances surrounding it. Upon our review, we find the State did not breach the plea agreement. *See Frencher*, 873 N.W.2d at 285.

**IV. Conclusion.**

Upon finding the State did not breach the plea agreement, we affirm the sentence as imposed.

**AFFIRMED.**